[Civ. No. 25563. First Dist., Div. Three. Aug. 10, 1970.]

AUTOMOBILE SALESMEN'S UNION, LOCAL 1095,
Plaintiff and Respondent, v.
EASTBAY MOTOR CAR DEALERS, INC., et al.,
Defendants and Appellants.

420

**COUNSEL**

Hardin, Fletcher, Cook & Hayes, Hardin, Cook, Loper & Martin and Cyril Viadro for Defendants and Appellants.

Davis, Cowell & Bowe and Thornton C. Bunch, Jr., for Plaintiff and Respondent.

**OPINION**

**CALDECOTT, J.**—Defendants Eastbay Motor Car Dealers, Inc., Lloyd A. Wise, Inc., J. E. French Co., Bob Philippi, Inc., and Lee Adams Pontiac, Inc., appeal from a judgment in favor of respondent Automobile Salesmen's Union, Local 1095, in an action for declaratory relief.

Respondent, Automobile Salesmen's Union, Local 1095 (hereinafter Union) is a labor organization representing automobile salesmen in Alameda County. Appellant Eastbay Motor Car Dealers, Inc. (hereafter Eastbay), is an employer association whose membership consists of some, but not all, of the automobile dealers in Alameda County, including appellants Lloyd A. Wise, Inc., J. E. French Co., Bob Philippi, Inc., and Lee Adams Pontiac, Inc. (hereafter dealers). Muller-Gordon Motor Company is also a member of the employer association and was a defendant in the trial court but is not a party to the appeal.

On July 26, 1966, Eastbay, as agent for the dealers affiliated with it, and Union entered into a collective bargaining agreement covering the salesmen employed by those dealers. That agreement contained the following provisions which are material to this appeal: "Section One. Authorization. (1) Eastbay Motor Car Dealers, Inc., hereby represents that it is the duly authorized agent for each and all of the dealerships listed on Exhibit 'A', attached hereto, for the purpose of signing, executing, and delivering this Agreement and, accordingly, at the time of signing, executing, and delivering this Agreement, will deliver to Union a certified list of the members on Exhibit 'A', bound by the terms of this Agreement, pursuant to power-of-attorney in full force and effect with said Eastbay Motor Car Dealers, Inc. and within a reasonable time, will deliver to Union written authorization or authorizations, signed by each of said dealership, authorizing Eastbay

Motor Car Dealers, Inc., to sign, execute, and deliver this Agreement for and on behalf of and as the act of each of said dealerships.

"After the execution and delivery of this Agreement, any dealership not listed on Exhibit 'A' shall be a party to this Agreement upon compliance with the following: Receipt by Union from Eastbay Motor Car Dealers, Inc., and the dealership that such dealership has duly authorized Eastbay Motor Car Dealers, Inc., as its agent to make, execute, and deliver this Agreement for and on behalf of and as the agent of said dealership, and that, from and after the date of said notice (or such other date as may be specified in the notice), such dealership shall be bound by all the terms and provisions of this Agreement. Upon receipt of such notice, Eastbay Motor Car Dealers, Inc., and Union will add the name of said dealership to Exhibit 'A'.

o o o

"Section Seventeen

"Other Agreements

■ "It is agreed that, if the Union negotiates a more favorable contract with another Employer or Employers in Albany, Berkeley, Oakland, Alameda, San Leandro or Hayward, the Eastbay Motor Car Dealers, Inc., shall have the option to adopt such contract, the question of 'more favorable contract' to be subject to the Board of Adjustment procedures of this Agreement."

On September 1, 1966, Union entered into a separate agreement with Melrose Motors, a dealer neither affiliated with nor represented by Eastbay. Insofar as it affected the method of compensating salesmen, that agreement admittedly qualified as a "more favorable contract" within the meaning of section seventeen of the agreement between Union and Eastbay.

Some time prior to October 1, 1966, Muller-Gordon Motor Company, one of the dealers affiliated with and represented by Eastbay, notified Union of its election to put the "more favorable" Melrose compensation provisions into effect as far as its salesmen were concerned. On October 1, 1966 Union and Muller-Gordon executed a separate agreement to that effect.

Between February 27 and April 13, 1967, appellants Lloyd A. Wise, Inc., J. E. French Co., Bob Philippi, Inc., and Lee Adams Pontiac, Inc. notified the Union of their election to exercise the option and to put the "more favorable" Melrose contract into effect. However, the Union took the position that section seventeen of the collective bargaining agreement

could not be invoked by less than all the dealers which Eastbay had represented and, shortly thereafter, filed this action to obtain a declaration of its rights and obligations under the agreement, including a declaration that it had validly rescinded the modified agreement with Muller-Gordon Motor Company.

The court below concluded that section seventeen of the agreement does not authorize a dealership individually and by itself to exercise the option therein provided and that the option may be exercised only by Eastbay acting on behalf of its collective membership. However, the court held that the modified agreement between the Union and Muller-Gordon was binding on the Union and not subject to rescission by reason of any unilateral mistake of law or fact. All defendants except Muller-Gordon have appealed from the judgment.

The sole issue raised by the appeal is whether an individual member of Eastbay can elect to exercise the option provided for in section seventeen of the contract.

Appellants contend that the trial court erred in holding that under the collective bargaining agreement the option contained in section seventeen could only be exercised by Eastbay acting on behalf of its collective membership and not by the individual members of the organization.

Section seventeen seems quite clear on its face. ■ However, as stated in *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 at p. 37 [69 Cal.Rptr. 561, 442 P.2d 641]: "A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained." ■ There is no question here but that the appellant dealers interpreted the contract as giving an individual dealer the right to exercise the option. As far as the respondent is concerned Chester Ansley, the secretary-treasurer of the Union, testified that he was the chief executive officer of the Union, he was authorized by the Union to sign contracts, and that he was present at the negotiations and signing of the contract in July of 1966. Ansley further testified that in September 1966, when George Muller, of Muller-Gordon, telephoned and said he wanted to exercise the option, that he, Ansley, went over to see Muller and took the new contract with him, and that there was no question in his mind as to the legal right of Muller-Gordon to exercise the option.

Thus the evidence is uncontradicted that both parties interpreted the contract as allowing an individual dealer to exercise the option. It was not

until the dispute with appellants arose that respondent asserted a different meaning.

The law is well settled that the construction of a contract as shown by the acts and conduct of the parties prior to the controversy as to its meaning, is entitled to great weight. (See *Riverside Water Co.* v. *Jurupa Ditch Co.*, 187 Cal.App.2d 538 at p. 543 [9 Cal.Rptr. 742].)

"Parties to a contract have a right to place such an interpretation upon its terms as they see fit, even when such an interpretation is apparently contrary to the ordinary meaning of its provisions." (*Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744 at p. 754 [8 Cal.Rptr. 427, 356 P.2d 171].) Furthermore, the acts of the parties under a contract should be used as a reliable means of interpreting an ambiguous contract. **(6)** The ambiguity can be created where the parties have demonstrated by their actions and performance what the contract meant to them, even though the words, standing alone, might have a different meaning to the court. If this were not the rule the court would be enforcing one contract when both parties have demonstrated that they mean and intend the contract to be quite different. (See *Crestview Cemetery Assn.* v. *Dieden, supra.*)

Here the parties by their actions have demonstrated that they knew what the contract meant and was intended to mean. The respondent's secretary-treasurer negotiated and signed the original contract in July. When an individual dealer, Muller-Gordon, in October, elected to exercise the option under the contract, the secretary-treasurer, without delay took a new contract to him and, according to his testimony, there was no question in his mind as to the right of an individual dealer to exercise the option. This was just two months after the signing of the original collective bargaining agreement. It was not until several months later, when a number of dealers stated that they preferred the Melrose contract that Ansley apparently realized the adverse effect of the option provision, and then sought a strict, literal interpretation of the contract.

The trial court also found, and so provided in the judgment, that the agreement between the Union and Muller-Gordon "constitutes a valid and enforceable agreement," was binding on the parties, and was not at any time validly rescinded.

The respondent in its brief discusses the nature and purpose of multi-employer collective bargaining, and has cited two cases supporting its legality. Although the cases correctly state the law, they are no help to us here as this is not an issue in the case. If the discussion is offered for the purpose of showing custom and usage in collective bargaining agreements

there was no evidence offered at the trial on this point, and thus it is not before the court.

The judgment is reversed insofar as it relates to the appellants Eastbay Motor Car Dealers, Inc., Lloyd A. Wise, Inc., J. E. French Co., Bob Philippi, Inc., and Lee Adams Pontiac, Inc. In all other respects the judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 9, 1970.